USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: April 28, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

KHALED SALEM,

Plaintiff,

-v-

ROYAL AIR MAROC,

Defendant.

---------------------------------------------------------------- X

15-cv-5909 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Pro se plaintiff Khaled Salem brings this action against defendant Royal Air Maroc ("RAM"). Plaintiff claims, inter alia, that on June 21, 2015 at Cairo Airport in Egypt, ticket counter employees of RAM acted in a discriminatory manner against him and his wife, caused him emotional distress, sexually harassed his wife, and prevented them from boarding a flight for which they had purchased valid tickets.

Defendant moved for summary judgment on all counts, arguing that as a matter of law, plaintiff cannot sustain a discrimination claim against a foreign entity based on actions that occurred outside of the United States and that plaintiff cannot bring a harassment claim on behalf of his wife. Defendant also argues that plaintiff has not raise triable issues on claims of intentional infliction of emotional distress and breach of contract. For the reasons set forth below, defendant's motion is GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff Khaled Salem, an American citizen, and his wife Hind Jennan, a citizen of Morocco, purchased tickets to travel aboard RAM Flight 273 from Cairo, Egypt to Casablanca, Morocco on the morning of June 21, 2015. When plaintiff and his wife arrived at the Cairo airport to board the flight, Jennan presented her Moroccan passport and plaintiff's American passport to two RAM employees at the ticket counter. (Compl. at 3; Def.'s Local R. 56.1 Stmt. of Undisputed Facts ("Def.'s 56.1") ¶ 5, 6.)[1] According to plaintiff, the employees began to question Jennan about her physical appearance and why she was married to plaintiff, who was standing beside her. The employees also asked Jennan to present a marriage certificate. (Compl. at 3.)

Plaintiff and the employees argued. (Id.; Def.'s 56.1 ¶ 7.) Plaintiff complained of sexual harassment and "yelled" at the employees. (Def.'s 56.1 ¶ 7; Aff. of John Maggio ("Maggio Aff."), Ex. 7 ("Salem Dep.") Tr. 68:25-70:23.) Plaintiff demanded the employees' names, which they refused to give him. (Compl. at 3.)

In the meantime, the RAM employees also weighed the luggage of plaintiff and his wife and stated that the luggage was overweight. Plaintiff then redistributed the items. (Compl. at 3.)

---

1 The Court notes that defendant's statement of undisputed facts are corroborated by plaintiff's own statements in his Complaint, deposition, or interrogatory answers.

RAM sends its Conditions of Carriage via confirmation e-mail to passengers who purchase tickets, and plaintiff does not dispute that he received them; the Conditions are also available on RAM's website. (Id. ¶ 8; id. Ex. 1 ("Conditions of Carriage").) Under the Conditions of Carriage, RAM may charge an overweight baggage fee and to deny boarding to passengers who refuse to pay the fee. (Aff. of Nancy Caruso, ECF No. 45 ("Caruso Aff.") ¶¶ 10, 11.) RAM may also deny boarding to passengers who behave abusively or aggressively to its staff. (Id. ¶ 11.)

After plaintiff yelled at them, the RAM employees obtained from a station manager permission to deny boarding to plaintiff. (Def.'s 56.1 ¶ 10.) The employees then destroyed plaintiff and his wife's boarding passes and told them they could not board the flight. (Id. ¶ 11; Compl. at 3.) In response, plaintiff called airport security, who took a statement from both plaintiff and the station manager. (Def.'s 56.1 ¶12.) The resulting report states that plaintiff alleged he was denied boarding because he refused to pay a fee for overweight baggage, but that he had removed the excess weight. (Maggio Aff. Ex. 5 ("Security Report").) The report contained no mention of complaints of sexual harassment or discrimination. (Id.) According to the report, the station manager stated that plaintiff was denied boarding because he refused to pay the overweight baggage fee and spoke inappropriately to the RAM agents. (Id.)

Plaintiff purchased two new tickets from Cairo to Casablanca for the next day via another airline, EgyptAir. (Def.'s 56.1 ¶ 14; Compl. at 3, 7-8.) Those tickets cost EGP 2,840 each, for a total of $725.38. (See id.) Plaintiff alleges that he

incurred the following costs in addition to the airline tickets, for the additional day that he and his wife spent in Cairo:

- $875 plus $680 for food for himself, his wife, his cousin, and his driver
- $950 for accommodation in Cairo for the evening of June 21, 2015
- $90 for accommodations in Casablanca that plaintiff and his wife had already booked for the evening of June 21, 2015
- $700 for the driver[2]
- $100 in payment from plaintiff to his cousin for one day of lost wages
- $20 for airport parking
- $70 for gas

(Def.'s 56.1 ¶ 15; Pl.'s Resp. to Def.'s First Set of Interrogatories, Maggio Aff. Ex. 3 ¶ 13.) In total, plaintiff has alleged $ 4,210.38 in out-of-pocket costs including the new EgyptAir tickets.

Plaintiff, proceeding pro se, filed a Complaint in New York City Civil Court on July 9, 2015. (Compl. at 4.) Defendant removed the action to federal court on July 28, 2015 under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(a) and 1441(d) on the basis that RAM is a foreign state pursuant to 28 U.S.C. § 1603(a) or an "agency or instrumentality of a foreign state" pursuant to 28 U.S.C. § 1603 (b). (Notice of Removal, ECF No. 1.) RAM is a corporation owned by the Moroccan government. (Caruso Aff. ¶ 6.)

[2] An unsworn statement from the driver states that plaintiff paid him $800. (Maggio Aff. Ex. 6, at 4.)

Plaintiff's Complaint only explicitly alleges claims of breach of Contract, sexual harassment on behalf of plaintiff's wife and discrimination on the basis of citizenship. (Compl. at 2-4.) During discovery, plaintiff also alleged that he suffered emotional distress. (Def.'s 56.1 ¶ 17.) However, plaintiff did not seek any medical attention for his alleged emotional distress following the incident. (Def.'s 56.1 ¶ 18.)

II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a

motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted). In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

## III. DISCUSSION

The Court notes at the outset that plaintiff has substantially failed to respond to defendant's motion for summary judgment. Plaintiff submitted an opposition and a surreply, each containing a few statements. (ECF Nos. 53, 55.) While portions of plaintiff's submissions are unintelligible to the Court, it is clear that his submissions do not contest any facts or arguments advanced by defendant. Rather, plaintiff argues, inter alia, that he should prevail because defendant made him a settlement offer that he considers insufficient; plaintiff also alleges that defendant's answers to interrogatories contained some unidentified "conflict of words" and "false statements." (Id.) These assertions are insufficient to raise a triable issue.

Plaintiff also re-asserts his claims of discrimination and economic damages. (Id.) However, "When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleadings," as plaintiff has done here. Wright, 554 F.3d at 266.

The Court now turns to the merits of each of plaintiff's claims.

### A. Discrimination Claims

Plaintiff asserts that defendant discriminated against him on the basis of his national origin, religion, and marital status. However, the federal antidiscrimination statute, 42 U.S.C. § 1981, does not apply to discriminatory conduct that occurs outside U.S. Territory. The statute states, "All persons within

the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981 (emphasis added). As the Second Circuit has held, nothing in the language or the "structure or history of Section 1981 suggests that Congress intended the statute to reach discrimination against individuals outside the territorial jurisdiction of the United States." Ofori-Tenkorang v. Am. Int'l Grp., Inc., 460 F.3d 296, 301 (2d Cir. 2006). In the absence of contrary expressed intention of Congress, there is a presumption against extraterritorial application of statutes. E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991). While "in other contexts . . . Congress has decided to extend the application of civil rights statutes to cover conduct occurring outside the jurisdiction of the United States . . . through explicit legislative amendments," Ofori-Tenkorang, 460 F.3d at 302, Congress has not legislated such an amendment for Section 1981.

Similarly, New York state and local antidiscrimination statutes also do not apply to extraterritorial acts by foreign defendants. See Harte v. Woods Hole Oceanographic Inst., 495 F. App'x 171, 172 (2d Cir. 2012) (citing opinions of New York state courts that have consistently held that the New York State Human Rights Law does not apply to acts of discrimination occurring outside of New York by foreign corporations); Esposito v. Altria Grp., Inc., 888 N.Y.S.2d 47, 48 (App. Div. 2009) ("[P]laintiff, a New York resident, has no right to bring a proceeding under these statutes against a foreign corporation for discrimination that allegedly occurred outside New York."); Hoffman v. Parade Publications, 933 N.E.2d 744, 748

(N.Y. 2010) (noting that the New York State human rights law allows New York residents to bring claims against "New York residents and corporations who commit unlawful discriminatory practices outside the state" (emphasis added)).

Plaintiff alleges that the discriminatory conduct occurred outside the jurisdiction of the United States at Cairo Airport in Egypt. He alleges that agents of RAM, a foreign entity and an instrumentality of the Moroccan government, discriminated against him. (Compl. at 3-4; Caruso Aff. ¶ 6.) Plaintiff's claims must be dismissed because neither federal nor state and local discrimination laws protect him against allegedly discriminatory conduct of a foreign corporation occurring outside of the United States.

B. Sexual Harassment Claim

Plaintiff states that he is bringing a claim against RAM "for sexual harassment towards my wife." (Compl. at 4.) Plaintiff makes no allegations that RAM sexually or otherwise harassed him. Plaintiff cannot assert third-party standing on behalf of his wife, since "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991). Plaintiff has not alleged that an exception to this rule should apply, as he has not suggested that his wife is hindered from protecting her own interests. See Fenstermaker v. Obama, 354 F. App'x 452, 454 (2d Cir. 2009) (citing Powers for the three criteria for third-party standing: injury in fact, a close relationship, and hindrance to the third party's

protecting her own interest). Therefore, plaintiff cannot sustain a claim for sexual harassment.

C. Emotional Distress Claims

The Court notes at the outset that plaintiff did not allege any emotional distress on his own behalf in the Complaint.[3] Construing plaintiff's pro se Complaint liberally and taking his later statements during discovery as an assertion of a claim for intentional or negligent infliction of emotional distress, this Court finds that plaintiff nevertheless cannot sustain a cause of action on this basis because he has failed to demonstrate injury.

Under New York law, the "tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). As the New York Court of Appeals has noted, the standard for intentional infliction of emotional distress is "rigorous, and difficult to satisfy." Howell v. New York Post Co., 612 N.E.2d 699, 702 (N.Y. 1993).

[3] Any claim for emotional distress on behalf of plaintiff's wife necessarily fails for the lack of standing reasons discussed above. See Powers v. Ohio, 499 U.S. at 410. Nor can plaintiff assert a cause of action for negligent infliction of emotional distress for bystander recovery of an immediate family member in the "zone of danger" of physical injury. See, e.g., Trombetta v. Conkling, 626 N.E.2d 653, 654 (N.Y. 1993).

Plaintiff has failed to raise a triable issue as to intentional infliction of emotional distress. To meet the first prong of "extreme and outrageous conduct," defendant's alleged conduct would have to be so "extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell, 612 N.E.2d at 702. Plaintiff has not alleged any such conduct. In fact, plaintiff has only alleged that RAM employees refused to give him their names when he confronted them and ripped up his boarding pass. (Compl. at 3.) This is patently insufficient as it is neither extreme nor outrageous "beyond all possible bounds of decency." Howell, 612 N.E.2d at 702.

In addition, plaintiff has not met the fourth prong of "severe emotional distress" because he has only made conclusory self-serving assertions as to injury. Courts have required that a plaintiff provide more than "subjective testimony," which, "standing alone, is generally insufficient to sustain an award of emotional distress damages. Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself." Patrolmen's Benevolent Ass'n. of City of New York v. City of New York, 310 F.3d 43, 55 (2d Cir. 2002) (internal citations omitted). Plaintiff has not proffered any evidence of such injury besides his own statement that he suffered "emotional distress." (Pl.'s Resp. to Def.'s First Set of Interrogatories, Maggio Aff. Ex. 3, ¶ 3.) He acknowledged that he did not seek medical treatment for his alleged emotional

distress. (Salem Dep. Tr. 60:8-23.) The "objective circumstances" of the alleged conduct also do not raise a triable issue as to injury.

D. Breach of Contract Claim

In his breach of contract claim, plaintiff alleges that he suffered economic damages as a result of RAM's disallowing him and his wife to board their scheduled flight on June 21, 2015. Defendant argues that it is entitled to summary judgment because it had not breached the Conditions of Carriage that govern plaintiff's ticket purchase; rather, it denied plaintiff boarding because of his unruly behavior at the check-in counter and his failure to pay an overweight baggage fee. (See Conditions of Carriage at 13, art. VII § 1 (stating that "the Carrier may refuse to transport a Passenger and their Baggage" if the passenger "behaves abusively and insultingly or uses abusive and insulting language to the . . . crew" and if "[t]he Passenger (or the person who paid for the Ticket) has not paid . . . all the applicable fees, taxes and charges.").)

Plaintiff does not dispute that the Conditions of Carriage contain the relevant contract terms and that he was bound by them. See also Reed v. Delta Airlines, Inc., No. 10 Civ. 1053 JGK, 2011 WL 1085338 at *3 (S.D.N.Y. Mar. 23, 2011).

Plaintiff does appear to dispute that he failed to pay the applicable fees for overweight luggage; according to plaintiff, he complied with the weight limits for his and his wife's luggage after removing items from their originally-overweight luggage. (Salem Dep. Tr. 74:7-75:15; Security Report at 3.) This disputed fact, however, is immaterial to the resolution of this motion because plaintiff has

acknowledged that he yelled at RAM employees before they revoked his boarding passes, which constitutes a proper basis under the Conditions of Carriage for RAM to revoke plaintiff's boarding passes. As plaintiff himself stated in his deposition, he "yelled at" the RAM ticket counter employees before the employees denied him boarding by ripping up his boarding passes. (Salem Dep. Tr. 68:25-69:10, 70:5-7.)[4] That plaintiff spoke inappropriately to RAM employees is corroborated by the statement from the station manager as recorded in the contemporaneous security report. (Security Report at 3 ("[T]he passenger . . . spoke inappropriately with more than one company employee").). On these facts, no reasonable jury could find that defendants breached the Conditions of Carriage by revoking plaintiff's boarding passes.[5]

[4] Although plaintiff later stated he was "not yelling" but rather speaking "in a loud voice," the Court notes that this later, self-serving statement was "blatantly contradicted by the record" and no reasonable jury could find for plaintiff. See Scott v. Harris, 550 U.S. 372, 380 (2007).

[5] The Court also agrees with defendant's contention in the alternative that plaintiff cannot sustain more than direct economic damages as a result of any breach of contract. Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003). Thus, the maximum amount that plaintiff may recover is $4,210.38, the total direct economic damages that plaintiff himself has listed.

The Court also notes that it has serious doubts as to the accuracy of some of the line items that plaintiff has alleged (including, for instance, $700 for a taxi driver, $1,555 in meal expenses for four individuals, and a $950 hotel room for one day), and that plaintiff would have to present evidence to substantiate these figures, which at first glance appears outlandish, at trial. It also notes that plaintiff is unlikely to recover for both the "1 day of lost in the apartment . . . in Casablanca [M]orocco" for $90 as well as $950 for accommodations for the same night in Cairo.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 47 and to terminate this action.

SO ORDERED.

Dated: New York, New York
April 28, 2016

KATHERINE B. FORREST
United States District Judge

CC: Khaled Salem
8301 Bay Parkway, Apt. 112
Brooklyn, NY 11214